*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ANTHONY KARAM,

        Plaintiff-Counterdefendant-
        Appellant,

v

ALTERMATT FARMS, LLC, JEFFERY
ALTERMATT, MITAL MODI, and SAIRAM
PROPERTIES, LLC,

        Defendants-Counterplaintiffs-
        Appellees,

and

ETAK HOLDINGS, LLC, KAREN
CORPORATION, M E KARAM, LLC, and
ROMEO LAND, LLC,

        Defendants-Appellees,

and

MEIJER, INC., and ROMEO GOLF FACILITIES,
LLC,

        Defendants.

UNPUBLISHED
February 21, 2019

No. 341576
Macomb Circuit Court
LC No. 2015-004581-CH

Before: GLEICHER, P.J., and K. F. KELLY and LETICA, JJ.

PER CURIAM.

Plaintiff appeals by right an order granting summary disposition in favor of defendants, Altermatt Farms, LLC, Jeffery Altermatt, Mital Modi, Sairam Properties, LLC, ETAK Holdings

LLC, Karen Corporation, M. E. Karam LLC, and Romeo Land LLC.[1] Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS

This case involves plaintiff's claim that he has an easement in the form of a two-track road, crossing numerous parcels of property. All of the properties over which the easement was alleged to exist were, at one time, collectively owned by JO-EL-K, LLC. JO-EL-K, LLC was formed in 1998 by Joseph Karam, Sr. and his wife, Elly. In 1985, Joseph Sr. began purchasing the various properties, which ultimately totaled approximately 530 acres. It contained two golf courses while the remaining land was leased to local farmers. Joseph Sr. and Elly had eight children. Plaintiff is their son and, with the exception of their son Raymond, who died unexpectedly in 2006, all of the other Karam children, as well as Raymond's heirs, are the members/shareholders of M. E. Karam, LLC, Karen Corp, ETAK, Romeo Land, Romeo Golf, and Karam Family, LLC.[2] The only non-family member defendants are Sairam, Modi, and Meijer, who acquired their property from various Karam family members after the original land partitioning in 2010.

Until 2004, Joseph Sr. made all of the ultimate decisions about management of the property. Beginning in 2004, all the Karam children were allowed to use the JO-EL-K property, and Joseph Sr. never prevented anyone from doing so. Although the managing member or members of JO-EL-K changed in 2004 and 2008, no family member was ever restricted from using the entire property. Plaintiff has been the member-manager of JO-EL-K since 2008. Joseph Sr. died in 2009. Because the family was unable to agree on management decisions, on December 23, 2010, the JO-EL-K property was split into four separate parcels and divided among the family.

Plaintiff, as the managing member of JO-EL-K, prepared and executed the four quit claim deeds partitioning the JO-EL-K property. All four deeds included an express easement allowing the grantees to use for ingress and egress the approximately 60-foot-long cement driveway that began at 32 Mile Road and ran south between the property owned by Romeo Golf and the property owned by M. E. Karam, LLC and Karen Corp. Thomas had installed the cement road around 1996. In addition, all four deeds included handwritten language, added by plaintiff, which provides:

> OWNERS OF PARCEL #S 24-04-01-20-041, 24-04-01-200-042, 24-04-01-300-011, 24-04-01-100-009 SHALL PROVIDE ONE TO ANOTHER ALL NEEDED UTILITY EASEMENTS, SAID EASEMENT LOCATIONS TO BE

---

[1] Defendants Meijer, Inc. and Romeo Golf Facilities, LLC entered into settlement agreements with plaintiff. References to "defendants" in this opinion do not include Meijer and Romeo Golf unless otherwise stated.

[2] ETAK Holdings is owned by Thomas and his sisters, Alita (Karam) Marshall and Elly (Karam) Sutphen. Romeo Land is owned by their brother, Joseph Karam, Jr.

DETERMINED UPON OWNERS DISCRETION (INCLUDING UTILITY EASEMENTS ALONG PAVED PRIVATE EXISTING[3] ROAD)[.]

The four parcel IDs listed corresponded to the four parcels conveyed in the 2010 deeds. Plaintiff has no current ownership interest in any of the parcels conveyed by the 2010 deeds, although he was a grantee in the 2010 deed to the parcel now owned by Romeo Golf.

Plaintiff owns two separate properties on 31 Mile Road: a .76 acre "pie shaped" parcel, and a 4.67 acre parcel. The smaller parcel was purchased from the Michigan Department of Transportation (MDOT) in August 1994, and the larger parcel was purchased from his mother in July 2011. Neither property was ever part of the JO-EL-K holdings, but the northern property line of both properties abuts former JO-EL-K property, now owned by Modi and Sairam, leased by Altermatt Farms, and farmed by Altermatt. Plaintiff claimed he farms his two properties as well as approximately two acres behind the clubhouse on the Romeo Golf parcel, on which grows mullein, an herb and a weed. He does not plant the mullein because it is self-seeding; he simply goes in and harvests it by hand. Plaintiff grew and harvested the mullein not for commercial purposes, but for "vocational" and personal reasons.

Sometime after the 2010 split, Modi/Sairam purchased their parcel from ETAK Holdings and Romeo Land. According to Modi, she was never aware of an easement, there were no paths or roads indicating an easement on the parcel, and there were no deeds, surveys, or other documents that referenced an easement over the parcel. In 1994, the Sairam/Modi parcel was a wooded area, which plaintiff began helping Joseph Sr. clear around the time plaintiff purchased his smaller parcel on 31 Mile Road. Plaintiff did not think Joseph Sr. knew that plaintiff was helping clear the property, but testified that Joseph Sr. "didn't care." There was no easement at that time, and plaintiff was unable to access the Sairam/Modi parcel with a tractor or farm equipment until 1998 or 1999. Thomas disputed plaintiff's assertion that plaintiff had used the easement road on the Modi/Sairam parcel since 1999 to move farm equipment because, according to Thomas, that was not possible; access to that area was not always available to permit that type of use.

Plaintiff's use of the road easement occurred during periods when his parents or an entity they controlled owned the land, and periods when the land was owned by someone else. According to plaintiff, he began using the path/trail/road on the Modi/Sairam parcel in 1995, had used it "very often yearly" since that time, and had last used it in 2015. He used the road for "underground water irrigation pipeline easement inspection." A three-inch line was put in by Altermatt Farms, which received permission from Joseph Sr. to install it, and ran from a fire hydrant, under part of plaintiff's pie-shaped parcel, onto the Sairam/Modi parcel. It was put in around 2000 when Altermatt Farms first started farming the land. The line was only one or two feet under the ground and, if it had a leak, plaintiff would have had to use the trail/road that ran next to the water line to dig up the line for repairs. However, the water line was not in use in 2017 and had not been in use for six or seven years. Altermatt was not aware of plaintiff ever

---

[3] Two deeds say "PAVED PRIVATE EXISTING ROAD," one says "EXISTING PAVED PRIVATE ROAD," and one says "PAVED PRIVATE ROAD EXISTING."

-3-

using the water line, and did not think plaintiff could currently use it because it was likely broken from not having been maintained, but agreed that plaintiff could have used the line while it was being maintained. Plaintiff also used the road three to four times a month, initially for walking and then for transporting farm equipment and personal exercising. Plaintiff asserted that he used multiple vehicles, including two tractors and multiple pieces of equipment, on the easement road.

Altermatt Farms began leasing the property that became the Modi/Sairam parcel around 2000. Altermatt had a lease with Sairam. The road through Altermatt's field had been there since he began farming the property, but it was not a five-foot gravel road at that time; it was a path that roughly followed the property line, which Altermatt had the trencher trench when the water line was put in. Altermatt planted soybeans, corn, wheat, and vegetables like tomatoes and peppers on the parcel, alternating which plants he grew. When he grew peppers or tomatoes, they left a little pathway, not always in the same place, to access the crops, but when he planted corn or soybeans, he plowed and planted the entire field up to the property line, including the road easement. Altermatt had planted crops over the alleged road easement on both the Sairam/Modi parcel and a parcel that he farmed that is currently owned by Karen Corp. and M. E. Karam, LLC. Altermatt began farming the JO-EL-K parcel, now owned by Karen Corp. and M. E. Karam, LLC, at Joseph Sr.'s request about a year after he had begun farming the JO-EL-K property that became the Sairam/Modi parcel. The only time Altermatt saw plaintiff on the Sairam/Modi parcel was when plaintiff drove his truck with a mobile home trailer attached to it across Altermatt's soybeans; Altermatt then asked plaintiff not to drive over his crops.

According to plaintiff, in 2015, Altermatt, Altermatt Farms, Modi, and Sairam tilled the graded dirt road along the Modi/Sairam parcel, thereby preventing the use of non-commercial vehicles, refused to regrade the road, and refused plaintiff's request for access to the easement. Plaintiff could not pinpoint the date but admitted that Altermatt had previously plowed over the road. According to Modi and Sairam, plaintiff offered to sell one of his properties to them, they offered fair market value, plaintiff requested greater than fair market value, and they refused.

On December 23, 2015, plaintiff filed a complaint against Altermatt, Altermatt Farms, Modi, and Sairam, seeking a declaratory judgment that he had "an easement in the form of a graded road" over their properties "for the purpose of hauling equipment, trailers and implements to and from other locations available to Plaintiff" for use on his properties. Altermatt, Altermatt Farms, Modi, and Sairam filed a counterclaim, asserting malicious prosecution, abuse of process, fraud, and misrepresentation, and alleging that plaintiff was seeking to coerce them into paying him more than his property was worth by filing the lawsuit. Plaintiff filed an amended complaint adding ETAK, Karen Corp., M. E. Karam LLC, Romeo Land, Meijer, and Romeo Golf as defendants because each owned property subject to the alleged easement. Although none of the parcel IDs on the 2010 quit claim deeds reference either of plaintiff's properties, plaintiff believed that the handwritten "utility" easement in the 2010 deeds granted him the express easement alleged in his amended complaint.

In October 2017, plaintiff and the Karam Family, LLC entered into a settlement agreement drafted by plaintiff involving the Romeo Golf parcel, which Romeo Golf had quit claimed to the Karam Family, LLC. The settlement agreement provided, in part, that all parties would honor the entire length of the easement, and all parties agreed to plaintiff's claims of

prescriptive, implied, and express easement rights and the handwritten easement language in the 2010 deeds.

All defendants ultimately moved for summary disposition, three under both MCR 2.116(C)(8) and (C)(10) and the remainder under only (C)(10). Plaintiff responded by arguing that defendants were attempting to minimize the fact that all of them were bound by the express reservation of easement in the 2010 deeds. Plaintiff further asserted that Meijer and Romeo Golf had recognized his easement rights in their lands and that multiple nonparties had recognized his consistent use of the alleged easement for at least 15 years before the lawsuit was initiated. Plaintiff argued that defendants' statements that all JO-EL-K members, of which plaintiff was one, could use the easement for business purposes was irrelevant because defendants did not provide any evidence that plaintiff's personal use of the easement was permitted, particularly where his access to the easement originated on land he owned—not JO-EL-K.

The trial court held that the 2010 deeds only referenced a utility easement, not an ingress-egress easement, and that plaintiff therefore did not have an express easement. Regarding plaintiff's claim of a prescriptive easement, the trial court noted plaintiff's testimony that all family members, once they were members of JO-EL-K, were free to use, walk, and transgress JO-EL-K property with Joseph Sr.'s permission. The court held that, as a member of JO-EL-K, plaintiff's use of the property could not be hostile. The trial court was aware that plaintiff was attempting to claim that his use was not pursuant to his duties as a member of JO-EL-K, but assumed that plaintiff, as a member, granted himself permission to use the property for his own personal use, because that "is the only thing consistent with his obligations as a board member." Because plaintiff was an acting member in 2004, the trial court held that plaintiff had not satisfied the 15-year requirement for open and hostile use necessary to create an easement.

The trial court also determined that there was no easement by necessity or implied easement because the 31 Mile Road property on which plaintiff did the mullein seeding and harvesting was not landlocked and no equipment was necessary for the seeding or harvesting. The court held that there was "not an easement recognizable for the property including an easement of any nature" and granted defendants summary disposition. Plaintiff now appeals.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision to grant summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). The evidence is considered in the light most favorable to the nonmoving party. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

The trial court failed to specify whether the motions were granted under MCR 2.116(C)(8) or (C)(10). However,

> [w]here the record is unclear with regard to which section of MCR 2.116 the trial court based its ruling, and both the defendant and the trial court relied on documentary evidence beyond the pleadings in support of the defendant's motion for summary disposition this Court must construe the defendant's motion as being

-5-

granted pursuant to MCR 2.116(C)(10). [*Krass v Joilet, Inc*, 233 Mich App 661, 664-665; 593 NW2d 578 (1999).]

A party is entitled to summary disposition under MCR 2.116(C)(10) when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *Barnard Mfg*, 285 Mich App at 369.

## III. ANALYSIS

## A. EXPRESS EASEMENT

Plaintiff argues the trial court erred when it determined he did not have an express easement. We disagree.

"An easement is an interest in land that is subject to the statute of frauds." *Lakeside Oakland Dev, LC v H&J Beef Co*, 249 Mich App 517, 525; 644 NW2d 765 (2002), quoting *Forge v Smith*, 458 Mich 198, 205; 580 NW2d 876 (1998). "In order to create an express easement, there must be language in the writing manifesting a clear intent to create a servitude. Any ambiguities are resolved in favor of use of the land free of easements." *Lakeside*, 249 Mich App at 525, quoting *Forge,* 458 Mich at 205. Here, the handwritten additions to the 2010 deeds expressly provide for "utility easements" and do not include any language about ingress or egress. The language is straightforward and requires no interpretation.

Plaintiff argues that "he intended and thought he had preserved an easement over those properties because of the easement he had used on the properties for farming and the installation of the waterline . . . , and the scope of the granting language in the quit claim deeds used to make the conveyances." However, what plaintiff believed he was creating is irrelevant. Only the language actually included in the deed is relevant to whether the deed contains an express easement. Plaintiff conceded that his two properties are not listed in the parcel IDs referenced in the 2010 deeds and, although he was previously an owner of one of the listed parcels, he does not currently have an ownership interest in any of the listed parcels. Therefore, any easement created by the handwritten language in the 2010 deeds has no applicability to plaintiff.

Plaintiff testified that he did not believe that the handwritten language on the 2010 deeds was necessary for him to have an easement on the Modi/Sairam parcel because the water line put in by Altermatt "was already memorialized under the ground at that time." However, the existence of Altermatt's waterline and any actions taken by plaintiff have no relevance to the issue of whether there was an *express* easement. "Some note or memorandum having substantial probative value in establishing the contract must exist . . .." *Forge*, 458 Mich at 206.

Plaintiff concedes that an easement falls within the statute of frauds, but argues, for the first time on appeal, that his partial performance removed an oral easement from the statute of frauds. Plaintiff's argument is conclusory and lacks any factual development. He does not indicate what facts establish an oral agreement for an easement and does not explain what actions he took that constitute partial performance of that agreement. Assuming plaintiff's use of the easement is the action on which he relies, plaintiff fails to explain how this use constituted

partial performance of some alleged oral agreement to which he never refers, and for which he provides no details, including with whom this alleged oral agreement was made.

Taking the facts in the light most favorable to plaintiff, the trial court did not err when it held that there was no genuine issue of material fact that plaintiff did not have an express easement over defendants' properties.

## B. IMPLIED EASEMENT

Plaintiff next argues that the trial court erred when it concluded that he did not have an implied easement. We decline to consider this issue. Plaintiff's entire argument consists of a conclusory three-line, single-sentence statement with one citation that includes no discussion of the two types of implied easements, the elements required to prove the existence of either type of implied easement, or facts applicable to any elements.

> It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority ether to sustain or reject his position. The appellant himself must first adequately prime the pump; only then does the appellate well begin to flow. [*Mitcham v City of Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959).]

## C. PRESCRIPTIVE EASEMENT

Plaintiff also argues that the trial court erred when it determined that plaintiff had not established that he obtained a prescriptive easement over defendants' properties. We disagree.

"A prescriptive easement results from open, notorious, adverse, and continuous use of another's property for a period of 15 years. A prescriptive easement requires elements similar to adverse possession, except exclusivity." *Matthews v Dep't of Natural Resources*, 288 Mich App 23, 37; 792 NW2d 40 (2010) (footnote omitted). Use is only considered adverse "when it would entitle the landowner to a cause of action against the trespasser." *Goodall v Whitefish Hunting Club*, 208 Mich App 642, 646; 528 NW2d 221 (1995). "Adverse or hostile use is use inconsistent with the right of the owner, without permission asked or given, use such as would entitle the owner to a cause of action against the intruder." *Id.*, quoting *Mumrow v Riddle*, 67 Mich App 693, 698; 242 NW2d 489 (1976).

Plaintiff's claim of a prescriptive easement is based on his testimony that he had his father's permission to use the entire JO-EL-K parcel as manager and a member of JO-EL-K, but did not have permission to use it for personal ingress and egress for his smaller parcel.[4]

---

[4] Because plaintiff did not acquire his larger parcel until 2011, any hostile use of the easement for the benefit of that property would have only lasted four years at the time he filed his lawsuit. Accordingly, there is no possibility of a prescriptive easement with respect to that property.

However, plaintiff testified that "[a]s a managing member," he never felt he needed permission to use the easement. Furthermore, plaintiff testified that Joseph Sr. was aware of plaintiff's use and never told plaintiff to stay out. According to plaintiff, Joseph Sr. "[n]ever objected . . . [n]ever kicked anybody off" for doing whatever they want, provided it was family. Finally, plaintiff testified unequivocally that he would not characterize himself as a trespasser.

Moreover, even crediting plaintiff's testimony that he intended his personal use of the JO-EL-K property to be hostile, the fact that Joseph Sr. granted his entire family permission to use the property in any way they chose negated any hostility. Fifteen years of hostile use only occurred if plaintiff continuously and adversely used the JO-EL-K property beginning before December 23, 2000 until he filed his lawsuit on December 23, 2015. Although plaintiff testified that he began clearing out the Sairam/Modi parcel in 1994, he later modified that date to 1998. He also testified that, although he did not think Joseph Sr. was aware of what plaintiff was doing, Joseph Sr. "didn't care," and there was no easement at that time. Plaintiff was unable to access the Sairam/Modi parcel with a tractor or farm equipment until 1998 or 1999. Thus, at best, plaintiff's hostile use of the alleged easement to move farm equipment did not begin until 1998. But even if we ignored plaintiff's testimony that Joseph Sr. did not care that plaintiff was using the JO-EL-K property back in 1994, all of the testimony in the record establishes that, around 2004, Joseph Sr. permitted all of his children to use the JO-EL-K property in any manner that they wished. Plaintiff may have never asked permission, but permission was granted nonetheless, and this permission destroyed the continuity of any hostile use by plaintiff; the 15-year time period reset to zero. Plaintiff's use of the JO-EL-K property did not become hostile again until the permission was revoked.

There is no question that permission was revoked in 2010 when the JO-EL-K property was split, but that would only give plaintiff five years of hostile use before filing his lawsuit. Even using other earlier possible dates for revocation—2009 when Joseph Sr. died, or 2008 when plaintiff became the member-manager of JO-EL-K—plaintiff still cannot establish a 15-year period of hostile use. Ultimately, by permitting his family to use the JO-EL-K property in any way they wished, Joseph Sr. destroyed any possible previous claim of prescription, and any subsequent period of hostile use does not reach the 15-year requirement. Taking the evidence in the light most favorable to plaintiff, there is no basis for concluding that plaintiff had a prescriptive easement.

## D. EASEMENTS IN GROSS

Plaintiff next argues that this Court must remand this case because, although the trial court determined that plaintiff did not have any easements appurtenant, it did not decide whether plaintiff had any easements in gross. We decline to address this issue. Again, plaintiff's briefing on this issue lacks substance and analysis, consists of three sentences, one case citation, and no facts, and fails to "prime the pump." *Mitcham*, 355 Mich at 203.

## E. SETTLEMENT AGREEMENTS

Finally, plaintiff argues that because the trial court did not reference his settlement agreement with the Karam Family, LLC when rendering its opinion, remand is necessary for

consideration of the effect of the settlement agreement on plaintiff's easement claims and defendant's entitlement to summary disposition. This argument lacks merit.

The trial court's failure to mention the settlement agreement when rendering its decision was not conclusive evidence that the trial court failed to consider it at all. Rather, upon review, it is clear that this settlement agreement was simply irrelevant to the question of whether plaintiff had an easement over the remaining defendants' properties. The only signatories to the agreement are plaintiff and the Karam Family, LLC, so they are the only parties bound by it. Although plaintiff included very favorable language in the settlement agreement that required the acknowledgment and honoring of the entire road easement, it is black letter law that "[a] right of way cannot very well be granted by deed, estoppel, or otherwise, by anyone but the landowner." *Von Meding*, 319 Mich at 606. No matter how explicit or precise the language, the Karam Family, LLC could not manufacture, endorse, create, or otherwise grant an easement to plaintiff over properties it did not own, and any statements or actions to the contrary did not bind any of the other defendants. Accordingly, plaintiff's settlement agreement with the Karam Family, LLC had no impact on his easement claims against the remaining defendants, and the trial court's failure to specifically state as much on the record was not error, and does not necessitate a remand.

## IV. CONCLUSION

Viewing the evidence in the light most favorable to plaintiff, the trial court correctly determined that there were no genuine issues of material fact. Plaintiff did not have any type of easement over defendants' properties and the trial court properly granted summary disposition to defendants under MCR 2.116(C)(10).

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Kirsten Frank Kelly
/s/ Anica Letica